# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN KENNEDY,** | : | Civil No. 3:17-CV-327 |
| **Plaintiff,** | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff's counsel in this Social Security appeal approaches the litigation of these cases with a profound passion, and a commendable commitment to his clients. That passion and commitment is evident in the brief submitted in support of this appeal which argues the plaintiff's claims in this case with great force.

As a reviewing court, however, we must approach this appeal from a very different, more dispassionate and significantly more deferential perspective. Our task is limited to resolution of the question of whether the findings of the Administrative Law Judge (ALJ) are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536

1

(M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

With our task defined in this fashion, we conclude under the deferential standard of review defined by the courts, that substantial evidence supported the decision of the ALJ in this case. Therefore, for the reasons set forth below, that decision will be affirmed.

## II.     Statement of Facts and of the Case

On February 20, 2014, John Kennedy applied for disability benefits under Title II and Title XVI of the Social Security Act. (Tr. 15.) Kennedy's application embraced a closed 13-month period of claimed disability, beginning on July 21, 2013, and concluding on August 21, 2014, when Kennedy returned to the workforce. In his application for benefits Kennedy alleged that he was disabled due to the combined effects of coronary disease and chronic obstructive pulmonary disease (COPD).(Id.)

Kennedy was 49 years old at the time of the alleged of his disability. (Tr. 32, 116.) He had a high school education, (Tr. 36), and past work experience as a

heavy equipment mechanic and delivery truck driver. (Tr. 43, 169.) Kennedy stopped working on July 20, 2013, when he was laid off by his employer because he could not do the exertional level of work required at his job as a mechanic. (Tr. 34.) Following this lay-off in July of 2013, Kennedy continued to collect unemployment benefits until those benefits expired. (Tr. 35-6.) Kennedy also testified that he actively sought employment in the trucking industry during this time but "there was nothing available at the rate I was being paid at the job I was laid off from." (Tr. 36.) Kennedy's job search ended when he resumed work in August of 2014, as a CDL truck driver. (Id.)

In addition to collecting unemployment benefits and pursuing employment opportunities, Kennedy's self-reported activities of daily living suggested some capacity for physical labor. Despite the chronic fatigue which Kennedy reported as a result of his coronary and pulmonary disease, Kennedy stated that he was able to cook; clean; care for his lawn; walk "quite a bit" every day; and occasionally shop for groceries and other items. (Tr. 38-39.) In an April 2014 adult function report, Kennedy reported that, despite the need to take breaks which reduced his efficiency, on a daily basis he worked around the house; cut the grass; cooked meals three to four times a week; washed laundry; performed home repairs; fed, watered, and walked his pets; cared for his children and wife; went outside daily;

walked, drove, or rode in a car; and shopped in stores for food, clothes, auto and truck parts, and household items. (Tr. 156.) In a supplemental pain questionnaire which Kennedy completed at this time, he also indicated that he has no disabling pain. (Tr. 163.)

Moreover, Kennedy's closed period disability claim was not supported by any medical source opinion stating that these coronary or pulmonary conditions were wholly disabling. Instead, the gist of this claim entailed medical records documenting treatment Kennedy received throughout this period for coronary and related medical concerns. With respect to Kennedy's condition during this 13-month closed period of claimed disability, the factual record was mixed.

That record documented three episodes of hospitalization for Kennedy between October of 2013 and May of 2014. Initially, on October 23, 2013 Kennedy was seen at the emergency room of Wilkes Barre General Hospital with complaints of a rapid heartbeat, fatigue and tiredness that limited his work to six hours. (Tr. 394-95.) On examination, Kennedy was found to be in uncontrolled atrial fibrillation, but converted to normal sinus rhythm with the appropriate therapy. (Tr. 395). He responded well to treatment and was discharged in satisfactory condition two days later, on October 25, 2013. (Tr. 395.)

4

In November 2013, Kennedy's atrial fibrillation recurred and he had a pacemaker implanted to regulate his cardiac rhythms.(Tr. 396.) Medical records indicate that at a follow-up appointment on January 7, 2014 with Nirode Das, M.D., his treating cardiologist, Kennedy reported that he was feeling stable and that his tiredness had improved. (Tr. 477.) Plaintiff denied chest pain and palpations, and continued to smoke against medical advice (Tr. 477). On examination, Kennedy's chest was clear and he had normal heart sounds. (Id.) An EKG also showed that Kennedy's pacemaker was functioning normally (Tr. 477). Dr. Das continued Plaintiff's medication, recommended that he follow a low-fat, low-cholesterol, low-salt diet, and advised him to stop smoking (Tr. 478). A February 2014 follow-up EKG revealed a normal ejection fraction of 61 percent. (Id.)[1] One month later, in March of 2014, Kennedy was seen by his primary care physician Dr. Kerrigan for a general physical examination. (Tr. 635.). At that time, Dr. Kerrigan noted that Kennedy had recently undergone a stress test with good results and Kennedy denied difficulty breathing, chest tightness, and shortness of breath. (Tr. 635-36.)

---

[1] An ejection fraction is a measure of cardiac efficiency and measures the percentage of blood leaving the heart each time it contracts. An ejection fraction inn excess of 55 is considered normal. https://www.mayoclinic.org/ejection-fraction/expert-answers/FAQ-20058286

Despite this care, Kennedy was hospitalized for a third occasion on May 21, 2014, after reporting to the emergency room complaining of severe palpitations and shortness of breath. (Tr. 500). He was treated with telemetry monitoring and IV therapy, and was discharged in stable condition four days later on May 25, 2014. (Tr. 505.) During a follow up appointment on May 28, 2014, it was reported that Kennedy had improved significantly, and that he denied any chest pain, shortness of breath, or chest palpitations. (Tr. 571.) In a June 2014, appointment Kennedy reported tiredness, but his breathing was unchanged with no evidence of failure. (Tr. 626.) An EKG showed pacemaker induced heart rhythm of 60 beats per minute. (Tr. 627).

During this closed period of claimed disability Kennedy was last seen by his primary care physician Dr. Kerrigan in June 2014. This medical appointment related to work that Kennedy was seeking since Kennedy saw the doctor for a physical examination for his commercial driver's license (CDL). (Tr. 637.) At that time Kennedy denied chest pain, difficulty breathing, chest tightness, and shortness of breath. (Tr. 637.) Kennedy's physical examination was normal and revealed that he was healthy, in no distress, had normal respiration, and no issues with his extremities. (Tr. 637-38.) Neurological and psychiatric examinations were also normal. (Id.)

It was against the backdrop of this medical record that the ALJ conducted a hearing concerning Kennedy's disability application on June 5, 2015. (Tr. 28-46.) At this hearing Mr. Kennedy and a vocational expert both appeared and testified. (Id.) Following this hearing, on July 17, 2015, the ALJ issued a decision denying this disability application. (Tr. 12-27.) In this decision, the ALJ first noted that Kennedy's claim related to a 13-month closed period of disability extending from July of 2013 to August of 2014. (Tr. 17-18.) The ALJ then determined at Step 2 of the sequential analysis governing social security claims that Kennedy suffered from a series of severe impairments including coronary disease, COPD, atrial fibrillation, bradycardia, tachycardia, and pacemaker installation. (Tr. 18.) At Steps 3 and 4 of this analytical process the ALJ concluded that none of these severe impairments were *per se* disabling, but found that Kennedy could not return to his past employment. (Tr. 18, 21.)

The ALJ then found that Kennedy retained the residual functional capacity to perform a range of light work with certain postural restrictions. (Tr. 19.) In reaching this conclusion, the ALJ recounted Kennedy's treatment history during the relevant period, (Tr. 20), noting that Kennedy performed heavy exertional work despite his cardiac issues until he was laid off in July of 2013. The ALJ also reviewed Kennedy's medical history and three hospitalizations in 2013 and 2014,

(Tr. 20-1), finding that the medical evidence confirmed that Kennedy experienced a number of medical issues that required hospitalization but also revealed that the care he received was effective in treatment of his symptoms. (Tr. 21.) Further, the ALJ observed that Kennedy received unemployment compensation benefits during this period, which typically require a certification that the recipient is ready and willing to return to work; actively sought employment during this period of claimed disability; and secured work as a CDL driver in August 2014. (Tr. 21.) Having made these findings, the ALJ concluded at Step 5 of this sequential analysis consistent with the vocational expert testimony, that there were substantial jobs in the national economy which Kennedy could perform, and denied this claim. (Tr. 22-23.).

This appeal then ensued, (Doc. 1), with plaintiff's counsel arguing on appeal that these ALJ findings were erroneous. (Doc. 14.) Yet while we appreciate counsel's zealous advocacy on this score, upon a consideration of the parties' briefs, and for the reasons set forth below, under the deferential standard of review which applies to Social Security appeals, we conclude that substantial evidence supports the findings of the ALJ. Therefore, that decision will be affirmed.

### III. Discussion

#### A. Substantial Evidence Standard of Review

In this case, Kennedy's appeal fails when the ALJ's decision is viewed under the highly deferential standard of review that applies to these cases. Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process,

the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C.

§1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying a plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not

mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a

lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic legal requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B. The Commissioner's Decision in This Case Should be Affirmed

Judged against this deferential standard of review, we find that the Commissioner's decision in this matter should be affirmed. At bottom, Kennedy argues that the ALJ's residual functional capacity assessment in this case, which led to the finding that Kennedy was not disabled during this closed period, was fundamentally and profoundly erroneous.

While Kennedy's counsel presses this issue with great vigor, we remain mindful that our review of the ALJ's assessment of the plaintiff's residual functional capacity is both limited and deferential. We are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Instead, we

must simply ascertain whether the RFC assessment is support by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Judged by this deferential standard of review an RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002). In making an RFC assessment, however, the ALJ is required to evaluate all relevant evidence, Fargnoli v. Massanari, 247 F.3d 34, 40–41 (3d Cir.2001), and explain her reasons for rejecting any such evidence, Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 122 (3d Cir.2000).

Here we find that substantial evidence supported the ALJ's residual function capacity determination. Indeed, much of that evidence was derived from Kennedy himself, who candidly acknowledged receiving unemployment benefits and actively pursuing employment during this alleged closed period of disability. The ALJ properly considered this information when finding that Kennedy was not disabled. Indeed, "in assessing a claimant's credibility: 'it was entirely proper for the ALJ to consider that [the claimant's] receipt of unemployment benefits was

15

inconsistent with a claim of disability during the same period. See, e.g., Johnson v. Chater, 108 F.3d 178, 180 (8th Cir.1997) (application for unemployment compensation benefits can adversely affect a claimant's credibility because of admission of ability to work required for unemployment benefits).'" Myers v. Barnhart, 57 F. App'x 990, 997 (3d Cir.2003)." Love v. Astrue, No. 1:12-CV-1923, 2014 WL 4915998, at *7 (M.D. Pa. Sept. 30, 2014). Likewise, evidence that a disability claimant is able to maintain employment during a period of claimed disability is relevant and undermines the credibility of any assertion that a claimant is wholly disabled. See Forster v. Colvin, 208 F. Supp. 3d 636, 639 (M.D. Pa. 2015).

Kennedy also candidly reported activities of daily living which were inconsistent with a claim of total disability. Despite the chronic fatigue which Kennedy reported as a result of his coronary and pulmonary disease, Kennedy stated that he was able to cook; clean; care for his lawn; walk "quite a bit" every day; and occasionally shop for groceries and other items. (Tr. 38-39.) In an April 2014 adult function report, Kennedy reported that, despite the need to take breaks which reduced his efficiency, on a daily basis he worked around the house; cut the grass; cooked meals three to four times a week; washed laundry; performed home repairs; fed, watered, and walked his pets; cared for his children and wife; went

outside daily; walked, drove, or rode in a car; and shopped in stores for food, clothes, auto and truck parts, and household items. (Tr. 156.)

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99–CV–715, 2000 WL 288246, at *9 (E.D.Pa. Mar. 7, 2000) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir.1997)). In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96–7p. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id. Social Security Regulations further identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. § § 404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his

or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id. See George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015). Here, the ALJ's decision to partially discount Kennedy's claims of disability based upon his self-reported physical activities adhered to this regulatory guidance and was supported by substantial evidence in the form of Kennedy's own statements and reports. Therefore, that finding may not be disturbed on appeal.

Finally, the ALJ's characterization of Kennedy's treatment history, which noted three hospitalizations, but indicated that Kennedy favorably responded to treatment on each occasion, is also supported by substantial medical evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). While Kennedy argues with great force that this medical evidence also can, and he believes should, permit a very different inference, and a finding of disability, we are not free to reach that result or re-weigh the evidence. Instead, we must we "grant . . . deference to agency inferences from facts if those inferences are supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d

18

Cir.1986) (citations omitted)." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986).

In sum, the ALJ's assessment of the evidence in this case fully complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Kennedy can demand in a disability proceeding. Therefore, notwithstanding Kennedy's forceful argument that this evidence might have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir.1986) (citations omitted)." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986).

Accordingly, under the deferential standard of review which applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

So ordered this 27th day of December, 2017.

                                       *s/Martin C. Carlson*
                                       Martin C. Carlson
                                       United States Magistrate Judge